1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLES JAMES PELLUM, | CASE NO. 2:21-cv-01203-JHC |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| CITY OF FEDERAL WAY, WASHINGTON, and DETECTIVE MICHAEL COFFEY, in his individual and/or official capacities, and Jane/John Doe, in his/her individual and/or official capacities, | |
| Defendants. | |

# I

## INTRODUCTION

This matter comes before the Court on Defendants' motion for summary judgment.  Dkt. # 24.  Defendants City of Federal Way and Michael Coffey move to dismiss Plaintiff Charles Pellum's claims that Defendants violated his Fourth and Fourteenth Amendment rights and committed malicious prosecution and intentional infliction of emotional distress.  The Court has reviewed: the materials submitted in support of, and in opposition to the motion; pertinent

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 1

portions of the record; and the applicable law.  Being fully advised, the Court GRANTS

Defendants' motion for summary judgment.[1]

## II

### BACKGROUND

On February 13, 2016, Leilani Gennings's son, Wesley, was murdered by Diante Pellum

and Michael Rogers.  Dkt. # 25-1 at 325–31.  Michael Coffey of the Federal Way Police

Department was the lead detective[2] to investigate the murder.  Dkt. # 32-1 at 46.  Detective

Coffey became familiar with alleged threats and harassment Gennings faced following the

murder, and the fear she harbored as a result.  Dkt. # 25-1 at 365–366, 368.

On January 6, 2019, Gennings, reported through a 911 call that she was threatened at a

Fred Meyer store in Federal Way, Washington.  Dkt. # 41-3.  Gennings described the incident as

follows: While waiting in a cashier line at the store, next to Customer Service, there was a White

family of three in front of her, and a Black man in front of them.  Dkt. # 25-1 at 348–47.  A

young Black man walked up to the Black man in line and was looking at Gennings.  *Id.* at 348;

Dkt. # 27-1 at 2.  The young man then approached Gennings, pointed his finger at her, and asked

who was pictured on her shirt.  Dkt. # 25-1 at 348; Dkt. # 27-1 at 2.  Gennings was wearing a t-

shirt with her son Wesley's photo on it.  Dkt. # 25-1 at 348; Dkt. # 27-1 at 2.  She told the man it

was her son Wesley and told him to "get out of my face."  Dkt. # 25-1 at 348, 355.  The man said

that he was "Donte's [sic] cousin," Dkt. # 27-1 at 2, and that his cousin did not do "it" (the

murder of her son) and that "Rogers" did it.  *Id.*; Dkt. # 25-1 at 348, 355.  As the man walked

---

[1] Notwithstanding the Court's *legal* conclusions herein, to the extent Plaintiff was wrongly arrested, and then held in custody and on Electronic Home Detention, the Court expresses its sympathy to him and his family.
[2] Michael Coffey was a detective for the Federal Way Police Department at the time of the events in this lawsuit, and he was promoted to lieutenant in May 2021.  Dkt. # 32-1 at 41.  For clarity, he is called "Detective Coffey" in this order.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2

away, he told Gennings, "We'll just do to you what we did to Wesley."  Dkt. # 25-1 at 355.

Gennings then sought assistance from Fred Meyer employees, who escorted her to her car.  Dkt. # 25-1 at 359.  She took the young man's statement as a threat and called 911.

Officer Jae An was dispatched in response to Gennings's 911 call.  Dkt. # 27 at 1–2; Dkt. # 27-1 at 2–3.  Gennings reported to him that she had identified the man as "C.J. Pellum."

Detective Coffey was assigned to this case on January 8, 2019, because of his familiarity with Gennings and the murder of her son.  Dkt. # 25-1 at 333; Dkt. # 27-1 at 3.  During his investigation, he reviewed Officer An's report, took a statement from Gennings, had a double-blind[3] six-photo montage administered to Gennings by Detective Bill Jack Forrester, and reviewed surveillance videos from the Fred Meyer.  Dkt. # 25-1 at 332–43; Dkt. # 26 at 1; Dkt. # 26-1 at 2.  In her statement, Gennings said that after she shared the encounter at the store with her niece — who had accompanied her to Fred Meyer but was not present at the scene of the alleged threats — her niece suggested they try to find the "cousin" on Facebook as the niece was Facebook "friends" with some of the Pellum family.  Dkt. # 27-1 at 2; Dkt. # 25-1 at 360–61.  Gennings said that, through this process, she identified Plaintiff, "C.J. Pellum" or Charles James Pellum, as the person who threatened her.  Dkt. # 25-1 at 360–61; Dkt. # 25-1 at 334.  (As mentioned above, Gennings then identified Pellum to An.)  Coffey did not interview Pellum before writing the probable cause certification at issue.  Dkt. # 41-8 at 3.  He communicated with King County Senior Deputy Prosecuting Attorney Jennifer Phillips during the drafting of the certification.  Dkt. # 25-1 at 400–06.  On February 1, 2019, Coffey finished the felony filing packet for Pellum, including his probable cause certification, and recommended a charge of

---

[3] A double-blind montage presentation is a process where "the person administering the montage does not know […] the identity of the suspect."  Dkt. # 32-1 at 33.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 3

intimidating a witness under RCW 9A.72.100.  *Id.* at 337, 407–11.  This was submitted to Phillips.  *Id.*

On February 6, 2019, a felony witness intimidation charge was filed against Pellum, Dkt. # 32-1 at 118–123, and a King County judge found probable cause existed to support the charge and issue an arrest warrant, Dkt. # 32-1 at 124–28.

On February 8, 2019, Pellum was arrested at his place of employment, the Fife McDonald's.  Dkt. # 40 at 1.  He was held at Pierce County jail and later transferred to King County jail.  *Id.* at 2.  On February 21, 2019, Pellum was released on Electronic Home Detention (EHD).  Dkt. # 41-12.

On February 20, 2019, Coffey received information indicating that Pellum may have been working at Pacific Building Services (PBS) during the time of the incident.  Dkt. 25-1 at 338–42.  Over the next several weeks, Coffey spoke with PBS employees, obtained GPS information[4] related to Pellum's clocking-in and -out, and surveillance footage of Pellum's place of employment.  *Id.*  Coffey relayed the information to the King County Prosecuting Attorney's Office.  *Id.* at 339, 420–27.  As a result, Phillips moved to dismiss the felony case against Pellum

---

[4] On February 20, 2019, Coffey connected with a PBS payroll employee who explained that Pellum "clocked in on 01/06/2019 at approximately 1600 hours, using an application on his phone.  [The employee] explained that this is the common way in which their employees log in and that their business uses a 'geo-fence' boundary within the proximity of the business that the employee is scheduled to be working at to confirm that they are at the location.  [The employee] stated that if the employee checks in/clocks within the geo-fence it will record that time for their payroll.  [The employee] stated that on 01/06/2019, Charles showed to have clocked in using the application which showed that he was in the MiKen Building (located in Seattle).  [The employee] reported that [Pellum] shows to have clocked in at about 1600 hours and did not clock out until 0032 hours on 01/07/2019."  Dkt. # 25-1 at 339.  On Coffey's request, the employee provided via email information about Pellum's "employment activity and a GPS location" that indicates "the area of the business that [Pellum's] phone logged in at.  The GPS location provided shows to be in the area of Fourth Ave in Seattle, the approximate location of the MiKen Building."  *Id.*

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 4

without prejudice on March 11, 2019.  Dkt. # 32-1 at 161–63.  Pellum was released from EHD. *Id.* at 94, 164–65.

Pellum brings this action against Detective Michael Coffey, the City of Federal Way, and Jane/John Doe, in his/her individual and/or official capacities.  Dkt. # 102 at 9.  He asserts these causes of action: (1) malicious prosecution; (2) intentional infliction of emotional distress; (3) as to the City of Federal Way, a 42 U.S.C. Section 1983 *Monell*[5] claim for depriving him of his Fourth Amendment rights due to its failure to have an appropriate policy that could have prevented the violation; (4) as to Coffey, a Section 1983 claim for violating his Fourth Amendment due process rights to be free of arrest and deprivation of liberty based on false evidence that was deliberately fabricated; and (5) also as to Coffey, a Section 1983 claim for violating his equal protection rights under the Fourteenth Amendment to be free of racial animus.[6]

### III

### DISCUSSION

A.    Summary Judgment Standard

Summary judgment is proper if the evidence, viewed in the light most favorable to the non-moving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).  A fact is material if it might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[5] *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 692 (1978).
[6] Against Defendant Doe, Pellum also asserts a Section 1983 claim for violating his Fourth Amendment due process rights to be free of arrest and deprivation of liberty and a Section 1983 claim for violating his equal protection rights under the Fourteenth Amendment to be free of racial animus.  Dkt. # 1-2 at 9.  The pretrial scheduling order set the deadline for joining additional parties as December 7, 2021. Dkt. # 17 at 1.  The deadline to name the John/Jane Doe Defendant has passed.  Therefore, this order addresses only the claims against Defendants Coffey and the City of Federal Way.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 5

242, 248 (1986).  A factual dispute is genuine if "the evidence is such that a reasonable [fact-finder] could return a verdict for the nonmoving party." *Id.* (internal citation omitted).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  If that burden is met, the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of [their] case that [they] must prove at trial." *Galen*, 477 F.3d at 658.  "Bald assertions that genuine issues of material fact exist are insufficient." *Id.* (internal citation omitted).

When the nonmoving party fails "to make a sufficient showing on an essential element of [their] case with respect to which [they] ha[ve] the burden of proof," "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323 (internal quotation omitted).

B.    Section 1983 Claims

Plaintiff asserts two Section 1983 claims against Detective Coffey: a Fourteenth Amendment equal protection claim and a Fourth Amendment due process claim.[7]   Section 1983 provides:

---

[7] Plaintiff says that he also brought a Section 1983 claim for malicious prosecution and, because Defendants did not address this claim in their motion, any defense to that claim for purposes of the motion is waived.  Dkt. # 39 at 20 n.20.  But Plaintiff did not include a Section 1983 malicious prosecution claim in his causes of action.  Dkt. # 1-2 at 9.  The complaint, at the "Causes of Action" section, outlines two Section 1983 claims against Coffey for a Fourth Amendment violation and Fourteenth Amendment.  *Id.*  It makes a Section 1983 claim against the City of Federal Way for a Fourth Amendment violation.  *Id.*  This section of the complaint does assert a claim for malicious prosecution but does not state it is brought under Section 1983.  *Id.*  Regardless, because the existence of probable cause "is an absolute defense to malicious prosecution," and, as discussed below, Plaintiff has not provided evidence to establish a genuine dispute of material fact as to the existence of probable cause, any Section

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State [...] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42. U.S.C. § 1983.  Therefore, Plaintiff must show that (1) a right secured by the United States Constitution or United States law was violated and (2) that the violation was committed by a person acting under the color of state law.  *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

      1.     Fourteenth Amendment equal protection claim

Plaintiff alleges that Detective Coffey violated his "equal protection rights under the Fourteenth Amendment to be free of racial animus."  Dkt. # 1-2 at 9.  Plaintiff claims that Coffey "acted with intent and/or purpose to discriminate against [Plaintiff] because of his race in violation of the equal protection clause of the Fourteenth Amendment."  Dkt. # 39 at 16.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike."  *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (internal quotation omitted) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  To demonstrate a Section 1983 claim for a Fourteenth Amendment equal protection violation, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Lee*, 250 F.3d at 686 (internal quotation omitted).

---

1983 malicious prosecution would fail.  *See Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054–55 (9th Cir. 2009).

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 7

1        Here, Plaintiff claims discrimination based on race.  Thus, to avoid summary judgment,

2 he "must produce evidence sufficient to permit a reasonable trier of fact to find by a

3 preponderance of the evidence that [the] decision … was racially motivated."  *Bingham v. City of*

4 *Manhattan Beach*, 341 F.3d 939, 948–49 (9th Cir. 2003), *overruled on other grounds in Edgerly*

5 *v. City & County of San Francisco*, 599 F.3d 949, 956 n.14 (9th Cir. 2010) (internal quotation

6 and citation omitted).  "Intentional discrimination means that a defendant acted at least in part

7 because of a plaintiff's protected status."  *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th

8 Cir. 1994), *as amended* (Nov. 22, 1994).  "Discriminatory intent may be proved by direct or

9 indirect evidence."  *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991)

10 (citing *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)).  But

11 "conclusory statements of bias do not carry the nonmoving party's burden in opposition to a

12 motion for summary judgment" in an equal protection claim.  *Thornton v. City of St. Helens*, 425

13 F.3d 1158, 1167 (9th Cir. 2005).

14        It is undisputed that Plaintiff, as a Black person, is a member of a protected class.  Dkt. #

15 1-2 at 5.  As to discriminatory intent, Plaintiff does not rely on direct evidence — such as

16 racialized comments made by Coffey that might indicate such animus.  Instead, Plaintiff points

17 to the following purported circumstantial evidence: (1) "deliberate deception in the probable

18 cause certification[;]" (2) Coffey's investigation into Plaintiff's evidence about his location at the

19 time of the incident was an "attempt to disprove that he was at work at the time of the incident

20 involving [Ms.] Gennings[;]" and (3) Coffey did not interview Plaintiff before writing the

21 probable cause certification.  Dkt. # 39 at 17–18.  For the reasons below, his arguments fail.

22       *Deliberate Deception & Investigation of Location.*  Plaintiff claims that Coffey deceived

23 the King County court in his probable cause certification.  Dkt. # 39 at 17.  Plaintiff does not

24

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 8

provide any evidence that the alleged deliberate deception was motivated by racial animus.  Nor does he provide evidence that Coffey's investigation into Plaintiff's location on the date of the incident was motivated by racial animus.  Instead, to show bias, states that Coffey's investigation sought to disprove that Plaintiff was at work.  But "conclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment" on an equal protection claim.  *Thornton*, 425 F.3d at 1167.

Coffey provided evidence of his motivation for looking into Plaintiff's location information, which he received *after* filing his probable cause affidavit.  Dkt. # 32-1 at 58. Coffey stated in his deposition that his motivation was to "ensure that we had the most truthful and accurate information present and that [Plaintiff] would be cleared of charges, if he was not the person who committed this crime[.]"  *Id.* at 56.  Once Coffey received the new evidence about Plaintiff's location on the day of the incident, the focus of his investigation "at that point was to try to identify the evidence, that [Coffey] felt compelled to do, based on [his] oath of office, to try to make sure that [he] presented the prosecutor with all relevant information necessary to determine whether they were going to continue with the case."  *Id.* at 52.  Coffey investigated the information provided and communicated with Plaintiff's employers about his location on the date of the incident.  Dkt. # 25-1 at 338–343; 420–427.

Coffey also provided evidence that his motivation behind the investigation into the January 6, 2019, incident was Gennings's safety, considering past confrontations she experienced after her son's murder.  Dkt. # 32-1 at 48–49, 54.  Coffey was familiar with Gennings's experiences of alleged threats made toward her after her son's death in 2016 and after her testimony in his murder trial.  Dkt. # 25-1 at 347; Dkt. # 32-1 at 102.  He was aware of the changes Gennings made to her lifestyle as a result of these alleged encounters, and the fear

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 9

that she harbored.  Dkt. # 25-1 at 365–366, 368.  And Plaintiff presents no evidence to raise an issue of fact as to discriminatory intent.

*Lack of Interview.*  Plaintiff says that Coffey's decision not to interview him before submitting the probable cause affidavit is evidence of his discriminatory intent.  Dkt. # 39 at 17.  Plaintiff asserts that Coffey "could not recount one other instance in which he did not interview or interrogate a felony suspect."  *Id.* (citing Dkt. # 41-8 at 4).  But Coffey explained that, when determining whether to interview or interrogate a person, the "totality of the circumstances" is considered.  Dkt. # 32-1 at 45, Dkt. # 41-8 at 3.  In this case, he determined it would be in the interest of Gennings's safety not to interview Plaintiff before charges were filed.  Dkt. # 41-8 at 3.  He "felt that contacting [Plaintiff] prior to that decision could increase the risk of a threat or danger to Gennings" given the information Coffey had before him.  Dkt. # 32-1 at 56.  Moreover, when asked if he could identify another case when he chose not to interrogate or interview a witness or a suspect, he stated, "I know that there have been times that I have not, but without reviewing cases, I couldn't speak to the specific details of those."  Dkt. # 41-8 at 4.

Plaintiff also refers to the deposition of Federal Way Police Lieutenant James Nelson, who testified as a Rule 30(b)(6) witness.  Dkt. # 39 at 17.   Nelson stated, "[I]f a suspect has not asserted his or her *Miranda* right to an attorney and they are willing to speak with a police officer, 'certainly, we will proceed and interview them.'"  *Id.* (citing Dkt. # 41-11 at 12–13); *Miranda v. Arizona*, 384 U.S. 436 (1966).  But this statement must be read in the context of Nelson's entire response to the question asked.  During his deposition, Nelson was asked about the criminal investigation section of Chapter 42 of the Federal Way Police Department Manual of Standards.  Dkt. # 41-11 at 12.  The section outlines the minimum investigative steps a preliminary investigation should include.  Dkt. # 25-1 at 12.  Nelson was asked "under what

circumstances would you get statements from suspects [in a criminal investigation]?"  Dkt. # 41-11 at 12.  He said that there are "lots of variables there, but if they're willing to provide a statement, you know, post Miranda" then that may be a situation."  *Id.*  He indicated, when a suspect has waived their *Miranda* rights, whether to interview a suspect "[a]gain, […] comes with so many variables.  It's a case-by-case scenario."  *Id.* at 13.  Nelson stated that for a shoplifting subject, for example, an officer may or may not attempt to "Mirandize" and interview.  *Id.*  He added that "with the gravity of an offense, a serious felony case, then we would take the time to make an effort to Mirandize and obtain a statement if the subject was so willing."  *Id.*[8]  And again, Plaintiff presents no evidence to raise an issue of fact as to discriminatory intent.

    2.    Fourth Amendment due process claim

    "[A]n arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983."  *Lee*, 250 F.3d at 685 (internal quotation marks and citation omitted).  Plaintiff claims that Coffey made false statements and material omissions in his probable cause certification, which constitutes judicial deception, and which led to his arrest.  Dkt. # 39 at 10.  Plaintiff asserts that his arrest thus lacked probable cause.  *Id.*

    Probable cause exists when, at the time of arrest, "the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed[]" by the suspect.  *Lassiter*, 556 F.3d at 1053; *United States v. Jensen*, 425

---

    [8] Plaintiff also provided evidence of a text conversation between Phillips and Coffey that occurred after his arrest.  Dkt. # 41-14.  Coffey alerted Phillips that Plaintiff had been arrested, and Phillips asked if anyone had tried talking to Plaintiff after the arrest.  *Id.*  Coffey responded that he was "just getting booked on the warrant[,]" indicating that the booking was still in process.  *Id.*  This does not speak to Coffey's motivations.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 11

F.3d 698, 704 (9th Cir. 2005) (explaining that whether probable cause exists is determined by "the facts and circumstances within the knowledge of the arresting officers [at the time of the arrest] and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believe that the petitioner had committed or was committing an offense."). In assessing probable cause, a court must look at the "totality of the circumstances." *Jensen*, 425 F.3d at 704.

To maintain a claim for judicial deception, a plaintiff must show that the officer who applied for the arrest warrant "deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011); *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009). Therefore, for Plaintiff to survive summary judgment on his Section 1983 judicial deception claim, he must "(1) establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause and (2) make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011); *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002). "Materiality is for the court, state of mind is for the jury." *Butler*, 281 F.3d at 1024. To determine the potential materiality of a false statement or omission, the court will "purge[] those statements and determine[] whether what is left justifies issuance of the warrant" or "determine[] whether the affidavit, once correct and supplemented [with the alleged omissions] establishes probable cause." *Ewing*, 588 F.3d at 1224.

Plaintiff alleges several false statements and omissions material to the decision on probable cause. First, Plaintiff asserts that Coffey's statements that the security video taken from the day of the threat showed him "approaching and interacting with the customer in line ahead of

Leilani…" and capturing "[Plaintiff] approaching Leilani" are false because Plaintiff was at work at the time. Dkt. # 39 at 11.  Second, he asserts that Coffey's statement that Gennings's niece was unidentified is false.  *Id.*  Third, Plaintiff asserts that Coffey omitted from the probable cause statement that Gennings "had made multiple unsubstantiated allegations that she had experienced death threats by the Rogers and Pellum families for the past three years." *Id.* at 12.  Fourth, Plaintiff asserts that the probable cause statement "omits the fact that Gennings was not a current or prospective witness in an official proceeding[,]" which Plaintiff claims is required by RCW 9A.72.110 for intimidating a witness.  *Id.*  Fifth, Plaintiff asserts that Coffey omitted that when Gennings called 911 after the incident, the operator noted that there was "no actual threat made. RP (Gennings) stated she didn't know who the male was.  RP was afraid an altercation would escalate and both parties separated and left." *Id.*

> i. Coffey's statements about the surveillance footage

When determining whether a false statement or omission was made in a probable cause affidavit, the court looks to the facts and circumstances within the knowledge of the arresting officer *at the moment of the arrest*.  *Jensen*, 425 F.3d at 704 (emphasis added).  It is undisputed that, at the time of the arrest (and after the submission of the probable cause certification), Coffey was not yet aware of information indicating that Plaintiff was at work at the time of the incident. Dkt. # 25-1 at 338, 420–27; Dkt. # 1-2 at 7.  Therefore, Coffey's statements were not "false" for purposes of a judicial deception claim.

Nor has Plaintiff provided evidence to establish a genuine issue of material fact as to whether the allegedly false statements were made intentionally or with reckless disregard of the truth.  Plaintiff states, "While it is true that Coffey viewed various Fred Meyer surveillance footage from January 6, 2019, Coffey knew that Charles Pellum did not appear on any of the

footage." Dkt. # 39 at 14.  Plaintiff cites Coffey's narrative reports detailing his investigations into the incident at Dkt. # 25-1 at 335–337, but this does not illustrate, and the Court cannot find any other evidence to support the statement that, Coffey "knew" it was not Plaintiff in the footage.[9]  Nor is there any evidence the allegedly false statement was made in reckless disregard of the truth.

          ii.      Coffey's statement that Gennings's niece was unidentified

When Coffey wrote the probable cause statement, he had not confirmed the identity of Gennings's niece, referred to at the time as "Uniqua Lushall" by Officer Jae An in his report. Dkt. # 41-3 at 17.  At the time of the drafting of the probable cause affidavit, Gennings's niece, known now as Uniqua Strothers, had not identified herself to any officer investigating the incident.  Dkt. # 32-1 at 174–77.  Because, at the time of the probable cause statement, Coffey had not identified Gennings's niece as Uniqua Strothers, his description of her as "unidentified" was not a false statement.

          iii.      Gennings's prior allegations.

Plaintiff asserts that Coffey's omission of Gennings's prior allegations of harassment or threats was material to the finding of probable cause.  Dkt. # 39 at 12.  Plaintiff states that Gennings has alleged five times that the "Pellum and Rogers families were stalking her, harassing her, and threatened to kill her[,]" Dkt. # 32-1 at 66, including one allegation

---

[9] Plaintiff relies on several inapposite Ninth Circuit cases that reversed summary judgment as to probable cause.  Dkt. # 39 at 11–13.  He cites *Liston v. County of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997); *Bravo*, 665 F.3d at 1080; and *Chism v. Washington State*, 661 F.3d 380, 386 (9th Cir. 2011).  *Id.* But in each of these cases, the court found that the officer knew about the omitted or false material information at the time of drafting an affidavit, and the statements or omissions were made with reckless disregard of the truth.  Here, it is undisputed that Coffey was unaware of evidence suggesting Plaintiff was at work during the incident until after the probable cause affidavit was signed.  Dkt. # 25-1 at 338, 420–27; Dkt. # 1-2 at 7.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 14

investigated by Detective Brian Bassage, Dkt. # 28; Dkt. # 28-1.  Coffey did not include the fact that Gennings made allegations in the past that the Rogers and Pellum families threatened her. *See* Dkt. # 28-1.  It is hard to see how this omission is material.  Coffey corroborated Gennings's allegations about the incident by several independent means.  Coffey obtained and reviewed surveillance footage from the Fred Meyer store where the alleged threat occurred, interviewed Gennings and had her sit for a photo montage, and reviewed the written report by Officer An that documented his discussion with Gennings.  Dkt. # 25-1 at 332–43.  Therefore, even if Coffey had included Gennings's prior allegations, there would still be probable cause.

Plaintiff contests the reasonableness of Coffey's corroboration, arguing that the photo montage administered to Gennings was invalid.  The six-pack photo montage was administered to Gennings in a double-blind procedure.  Dkt. # 26-1 at 2.  The montage was prepared using the Federal Way Police Department's record management system, Dkt. # 32-1 at 54, in line with the City's standard approach to administering photo montages.  *See* Dkt. # 32-1 at 32–35.

Plaintiff contends that "the pre-identification of Pellum by Gennings's niece demonstrates why this improperly administered montage is invalid" and cites *State v. Derri*, 511 P.3d 1267 (Wash. 2022) to support that proposition.  Dkt. # 39 at 14.  But *Derri* addresses suggestive law enforcement procedures in which double exposure of a suspect to an eyewitness was conducted by law enforcement.  Here, Gennings first saw a picture of Plaintiff when it was shown to her by her niece, a private citizen, not law enforcement.  Therefore, Gennings's viewing of a picture of Plaintiff before the photo montage does not invalidate the photo montage identification.  *See, e.g.*, *State v. Knight*, 729 P.2d 645 (Wash. Ct. App. 1986) (holding that the rule against impermissibly suggested pretrial identifications does not apply when private citizens identified a suspect in a photograph).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

      iv.       Gennings's Status under RCW 9A.72.110.

Plaintiff claims Coffey omitted from the probable cause statement the fact that Gennings "was not a current or prospective witness in an official proceeding[,]" as required by RCW 9A.72.110.  Dkt. # 39 at 12.  This claim misses the mark, as Plaintiff was charged under RCW 9A.72.110(2), Dkt. # 32-1 at 119, which covers charges for intimidating a *former* witness.  RCW 9A.72.110(2) ("A person also is guilty of intimidating a witness if the person directs a threat to a former witness because of the witness's role in an official proceeding.").  A former witness includes "(i) A person who testified in an official proceeding [.]"  RCW 9A.72.110(3)(c)(i).  And Defendants have provided evidence that Gennings was a former witness as defined by (i).  Dkt. # 25-1 at 368–69 (detailing Gennings involvement in the murder trial where she testified).

      v.       911 Emergency Operator's Notes.

Plaintiff asserts that Coffey omitted that the 911 operator noted that there was "no actual threat made.  RP (Gennings) stated she didn't know who the male was.  RP was afraid an altercation would escalate and both parties separated and left."  Dkt. # 39 at 12.  But this ignores other information Coffey gathered concerning the incident.  The initial entry documenting the call reported, "[L]ess than 5 [minutes] ago, male threatened to kill RP [Gennings], Sec[urity] walked RP to her veh[icle] in [parking lot][.]"  Dkt. # 41-3.  And while the 911 operator notes describe the man as "unknown," the report by Officer An, which was reviewed by Coffey, Dkt. # 25-1 at 333–34, describes the situation as Gennings being approached by a "male unknown to her." Dkt. # 27-1 at 2.  According to the report, Gennings said she did not know the man, but he identified himself as "Donte's [sic] cousin" and stated that "Roger's [sic] did it, not my cousin." *Id.*  An's report also included that Gennings stated the man told her, "'[W]ell if you don't like it, then we can give you what your son got.'"  *Id.*  Therefore, omitting the entry from the 911 call

notes detailing the person who approached Gennings as "unknown" and that "no actual threat was made" is immaterial to the finding of probable cause.

C.     State Law Claims

        1.     Malicious prosecution claim

        To maintain an action for malicious prosecution under Washington Law, a plaintiff must show "(1) that the malicious prosecution defendants initiated or continued a principal action; (2) that the malicious prosecution defendants acted without probable cause; (3) that the malicious prosecution defendants acted with malice; (4) that the principal action terminated in favor of the malicious prosecution plaintiff; and (5) that the principal action damaged the malicious prosecution plaintiff." *Loefelholz v. C.L.E.A.N.*, 82 P.3d 1199, 1215 (Wash. Ct. App. 2004), *as amended on denial of reconsideration* (Mar. 2, 2004).  While a plaintiff must prove all elements, "malice and want of probable cause constitute the gist of a malicious prosecution action." *Hanson v. City of Snohomish*, 852 P.3d 295, 298 (Wash. 1993); *see also Bender v. City of Seattle*, 664 P.2d 492, 500 (Wash 1983).

        In assessing whether probable cause exists, if it is clear that the defendant law enforcement officer "made to the prosecuting attorney a full and fair disclosure, in good faith, of all the material facts known to [them], and that prosecuting attorney thereupon preferred a criminal charge and caused the arrest of the accused, probable cause is thereby established as a matter of law." *Peasley v. Puget Sound Tug & Barge Co.*, 125 P.2d 681, 688 (Wash. 1942); *see also Robertson v. Bell*, 358 P.2d 149, 152–53 (Wash. 1961); *see also Bender*, 664 P.2d at 500. On the other hand,

> if any issue of fact exists, under all the evidence, as to whether or not the prosecuting witness did fully and truthfully communicate to the prosecuting attorney […] all the facts and circumstances within [their] knowledge, then […] the existence or nonexistence of probable cause must then be determined by the jury.

*Peasley*, 125 P.2d at 689; *see also Robertson*, 358 P.2d at 152–53; *see also Bender*, 664 P.2d at 500–01.

"A prima facie case of want of probable cause is established by proof that criminal proceedings were dismissed […] in favor of the party bringing the malicious prosecution action." *Peasley*, 125 P.2d at 688; *see also Robertson*, 358 P.2d at 152. If a prima facie case is made by a plaintiff, it may be rebutted by defendant's evidence. In such a case, "plaintiff must *by evidence* affirmatively establish want of probable cause." *Peasley*, 125 P.2d at 688. The establishment of probable cause is a complete defense to a malicious prosecution action. *Hanson*, 852 P.3d at 298.

And even if a plaintiff establishes a genuine issue of material fact about probable cause, to avoid summary judgment, they must also establish a genuine issue of material fact about malice on the part of the defendant. *Peasley*, 125 P.2d at 688. Malice may be shown when "the prosecution complained of was undertaken from improper or wrongful motives or in reckless disregard of the rights of plaintiff." *Id.* at 689; *see also Bender*, 664 P.2d at 501. An improper or wrongful motive may be shown if defendant "instituted the criminal proceedings against the plaintiff: (1) without believing [them] to be guilty, or (2) primarily because of hostility or ill will toward [them], or (3) for the purpose of obtaining a private advantage as against [them]." *Peasley*, 125 P.2d at 689; *see also Bender*, 664 P.2d at 501. "Reckless disregard" "requires proof of bad faith, a higher standard than negligence" and may be shown by showing that the defendant "entertained serious doubts." *Youker v. Douglas County*, 258 P.3d 60, 68 (Wash. Ct. App. 2011) (citing *State v. Chenoweth*, 158 P.3d 595, 602 (Wash. 2007)). Malice cannot be inferred from the lack of probable cause — "the plaintiff must [] demonstrate affirmative acts

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 18

disclosing at least some feeling of bitterness, animosity or vindictiveness towards the appellant." *Youker*, 258 P.3d at 68 (internal citation and quotation omitted).

As explained above, Plaintiff has not provided evidence to create a genuine dispute of material fact about probable cause.  See *supra* III(B)(2).  Granted, the criminal charge against Plaintiff was dismissed, giving rise to a prima facie showing of want of probable cause.  Dkt. 41-8 at 5; *See Peasley*, 125 P.2d at 688.  But Defendants respond with evidence rebutting this prima facie case.  See *supra* III(B)(2).  In response, Plaintiff did not provide evidence creating a genuine issue of material fact about probable cause.  See *supra* III(B)(2).

Nor has Plaintiff provided evidence establishing a genuine issue of material fact as to malice.  Plaintiff has provided no evidence that Coffey wrote the probable cause affidavit for Plaintiff "without believing [Plaintiff] to be guilty."  *Peasley*, 125 P.2d at 689.  Nor has Plaintiff provided evidence indicating that Coffey acted "primarily because of hostility or ill will toward" Plaintiff or "for the purpose of obtaining a private advantage" against him.  *Id.*  As explained above, *supra* III(B)(1), the evidence provided indicates that Coffey's primary concern was for Gennings's safety.  Plaintiff has provided no evidence to contradict this.  He has also not provided any evidence to suggest Coffey acted with bad faith, such as entertaining serious doubts before submitting the probable cause affidavit.  *Youker*, 258 P.3d at 68.  Plaintiff has not provided evidence that Defendant Coffey made a materially false statement or omission in reckless disregard of the truth.  *Supra* III(B)(2).

2.      Intentional infliction of emotional distress claim

The elements of the tort of intentional infliction of emotional distress (also known as outrage) are: defendant committed (1) extreme and outrageous conduct, (2) intentionally or

recklessly inflicted emotional distress, and (3) the actual result of this conduct was plaintiff

experiencing severe emotional distress.  *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003).

For the first element,

[I]t is not enough that a defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

*Grimsby v. Samson*, 530 P.2d 291, 295 (Wash. 1975).  The conduct must be "'so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community.'"  *Kloepfel v. Bokor*, 66

P.3d 630, 632 (Wash. 2003) (citing *Grimsby v. Samson*, 530 P.2d 291, 291 (Wash. 1975)).

For the second element, the conduct must have been intentionally or recklessly inflicted

— "mere negligence is not enough."  *Grimsby*, 530 P.2d at 295.

And for the third element, emotional distress includes "all highly unpleasant mental

reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

disappointment, worry, and nausea.  […]  Severe emotional distress is, however, not transient

and trivial but distress such that no reasonable man could be expected to endure it."  *Kloepfel*, 66

P.3d at 636 (internal citation and quotation omitted).  "[A] showing of bodily harm is not

necessary."  *Grimsby*, 530 P.2d at 295.  Moreover, "[i]t is for the court to determine whether on

the evidence severe emotional distress can be found; it is for the jury to determine whether, on

the evidence, it has in fact existed."  *Kloepfel*, 66 P.3d at 635.

While Washington courts have held that outrage cases "should ordinarily go to a jury" it

is up to the court, at the outset, to determine "whether reasonable minds could differ on whether

the conduct is sufficiently extreme to result in liability."  *Pettis v. State*, 990 P.2d 453, 459

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 20

(Wash. Ct. App. 1999).  Essentially, a court must first determine whether the conduct could reasonably be viewed (1) as extreme and outrageous and (2) intentionally or recklessly inflicted. *Id.* ("[t]he trial court must initially decide that the conduct could reasonably be regarded as extreme and outrageous to then warrant a factual determination by a jury."); *see also Brower v. Ackerley*, 943 P.2d 1141, 1149 (Wash. Ct. App. 1997) ("When the conduct offered to establish the tort's first element is not extreme, a court must withhold the case from a jury notwithstanding proof of intense emotional suffering.").  If the court finds a plaintiff has provided evidence to satisfy the first two elements, the case of outrage should then go to the jury "so long as the court determines the plaintiff's alleged damages are more than mere annoyance, inconvenience, or normal embarrassment that is an ordinary fact of life." *Brower*, 943 P.2d at 1149 (internal quotation marks omitted); *see also Case v. Kitsap Cnty. Sheriff's Dept.*, 249 F.3d 921, 932 (9th Cir. 2001).

Plaintiff asserts that Coffey "put Pellum in danger by choosing to falsify and omit material facts to obtain probable cause for a felony" and "obtain[ed] a warrant for the arrest of Pellum despite the fact Coffey knew where Pellum lived." Dkt. # 39 at 22.  Plaintiff asserts that this conduct, combined with his "failure to contact Pellum" constituted extreme and outrageous behavior. *Id.* As explained above, there is not a genuine dispute of material fact for the existence of probable cause.  And while it is true that Plaintiff has provided evidence showing his alleged damages were more than "mere annoyance, inconvenience, or normal embarrassment,"[10] he has not provided evidence to establish a genuine issue of material fact as to

---

[10] In his deposition, Plaintiff described feeling "scared, nervous, palms sweating" during his arrest, and referred to the arresting officers allegedly telling him that "bounty hunters" and "marshals" will "be coming," and that he'd be "doing 10 [to] 15 years," which made his "heart just drop[]." Dkt. # 41-1 at 6–8.  He explained that his mind immediately went to his son and family, and he broke down in tears. *Id.*

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 21

the first two elements of outrage.  *Brower*, 943 P.2d at 1149.  Moreover, much of the conduct Plaintiff mentions was by officers other than Coffey.  Coffey was not present when Plaintiff was arrested and, therefore, did not make the comments about "bounty hunters," "marshals," or "doing 10 [to] 15 years."  Dkt. # 29; Dkt. # 29-1; Dkt. # 30; Dkt. # 41-1 at 6–8.  And Coffey was not responsible for the actions of jail employees who allegedly did not communicate with Plaintiff as to why he was in jail.  Dkt. # 41-1.

Incidentally, Defendants say that the Court should strike Plaintiff's declaration at Dkt. # 40, calling it a "sham affidavit" that contradicts his prior testimony.  Dkt. # 44 at 14 n.3.  Defendants assert that Plaintiff, for the first time in this declaration, alleges that the officers made comments about potential jail time and bounty hunters and marshals coming for him and that he did not dispute anything in the arresting officer's report, per his deposition.  *Id.* at 14.  But Plaintiff stated in his deposition that one of the arresting officers told him, "The bounty hunters – the marshals, they'll be coming – they would have came after me" and that the officer told him, "'You're going to be doing 10 or 15 years, 10 to 15 years.'"  Dkt. # 41-1 at 7.  Nor did Plaintiff confirm that he did not dispute any statement in the report; he stated that he agreed with the arresting officer's report that the officer did not ask him any questions.  Dkt. # 45-2 at 8.

The Court does not see how Coffey's alleged conduct could reasonably be viewed as "outrageous and extreme."  Plaintiff has not provided evidence to establish a genuine dispute of material fact that Coffey's conduct went "beyond all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community."  *Kloepfel*, 66 P.3d at 632.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 22

1

2

D. *Monell* Liability

The language of 42 U.S.C. Section 1983 cannot be read to impose vicarious liability "on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell*, 436 U.S. at 692; *Connick v. Thompson*, 563 U.S. 51, 60 (2011). "A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694); *see also Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). And while a constitutional violation must result from "official municipal policy," a municipality need not expressly adopt the policy — it is sufficient that the constitutional violation occurred under to a "longstanding practice or custom." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1992). Therefore, to establish liability against a government entity under *Monell*, a plaintiff must prove "(1) that [the plaintiff] possessed a constitutional right of which [they were] deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty*, 654 F.3d at 900 (internal quotation marks omitted).

A municipal policy may exist when the individual who committed the constitutional violation had final policy-making authority or "such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010) (internal quotation marks omitted); *see also Christie*, 176 F.3d at 1238 ("A municipality also can be liable for an isolated constitutional violation if the final policy maker ratified a subordinate's actions."). Moreover, a policy may amount to a deliberate indifference of a plaintiff's constitutional right if (1) there is a failure to train when "the need to train was obvious and the failure to do so made a violation of constitutional rights

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 23

likely[.]" *Dougherty*, 654 F.3d at 900 (internal quotation marks omitted). "Mere negligence in training or supervision, however, does not give rise to a *Monell* claim." *Id.* A plaintiff must establish there is a genuine issue of material fact that a policy amounted to a deliberate indifference of plaintiff's constitutional right. *See Christie*, 176 F.3d at 1240.

Plaintiff appears to argue that the City of Federal Way is liable for (1) a failure to train and (2) ratification of Coffey's allegedly unconstitutional conduct "when he was promoted from detective to lieutenant in 2021." Dkt. # 39 at 18–19. As explained above, Plaintiff has not shown a genuine issue of material fact exists about whether his Fourth Amendment right was violated through Coffey's probable cause certification. *Supra* III(B)(2). Nor has he shown a genuine issue of material fact exists about whether the City had a policy that amounted to a deliberate indifference to Plaintiff's Fourth Amendment rights.

### 1.    Ratification

"To show ratification, a plaintiff must prove that the authorized policy makers approve a subordinate's decision and the basis for it." *Christie*, 176 F.3d at 1239 (internal quotation marks omitted). Ratification is typically a question for the jury, but a plaintiff must establish there is a genuine issue of material fact that the ratification occurred. *Id.* at 1238–39. Therefore, for a *Monell* claim on a ratification-based theory to survive summary judgment, a plaintiff must show there is a genuine issue of material fact that the person ratifying conduct (1) was a final policy maker under state law, (2) had knowledge of the alleged constitutional violation and, (3) expressly approved of the conduct. *See id.* at 1239.

Whether an official has final policymaking authority is a question of state law for the court to decide before submission to the jury. *Christie*, 176 F.3d at 1235; *L.A. Police Protective League v. Gates*, 907 F.2d 879, 889 (9th Cir. 1990). And because the approval must be

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 24

deliberate, the final policy maker must have had knowledge of the alleged constitutional

violations. *Christie*, 176 F.3d at 1239.  Finally, even if the actor is a final policy maker and they

had knowledge of the alleged constitutional violation, a plaintiff must show that the final policy

maker expressly approved of the conduct. *Id.* ("A policymaker's knowledge of an

unconstitutional act does not, by itself, constitute ratification.  Instead, a plaintiff must prove that

the policymaker approved of the subordinate's act.").

Plaintiff's ratification argument consists of seven lines in his response to the motion for

summary judgment.  Dkt. # 39 at 19.  Plaintiff cites no evidence that identifies the final policy

maker who allegedly ratified Coffey's conduct, whether that final policy maker had knowledge

of Coffey's actions, or that this final policy maker expressly approved of Coffey's conduct. *Id.*

The Court cannot find any evidence in the record to raise a genuine issue of material fact for any

of these three elements.

2.      Failure to train

"A municipality's culpability for a deprivation of rights is at its most tenuous where a

claim turns on a failure to train." *Connick*, 563 U.S. at 61.  Proof of inadequate training "does

not render the city liable [under Section 1983] per se." *City of Canton v. Harris*, 489 U.S. 378,

388 (1989).  Instead, to sustain a Section 1983 claim against a municipality on a "failure to train"

ground, the municipality's failure to train "must amount to deliberate indifference to the rights of

persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61

(2011) (internal quotation marks omitted).  Failure to train resulting in deliberate indifference "is

a stringent standard of fault[.]" *Id.*  "[W]hen city policymakers are on actual or constructive

notice that a particular omission in their training program causes city employees to violate

citizens' constitutional rights, the city may be deemed deliberately indifferent if the

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 25

policymakers choose to retain that program." *Id.*  But to demonstrate a failure to train resulting in deliberate indifference, plaintiffs typically must point to "[a] pattern of similar constitutional violations by untrained employees[.]"  *Id.* at 62 ("Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action — the deliberate indifference — necessary to trigger municipal liability.").

Plaintiff asserts that the Federal Way Police Department's policy on racial bias is "implemented in name only."  Dkt. # 39 at 19.  He describes how the Federal Way Police Department implements its racial profiling prevention policy in its Manual of Standards, Police Section 1.2.9, as depicted by FWPD designated Rule 30(b)(6) witness, Lieutenant James Nelson. *Id.*; Dkt. # 32-1 at 7.  Plaintiff states that Nelson is "unaware of any investigation of potential violations of fair and impartial policing complaints."  Dkt. # 39 at 19 (citing Dkt. # 41-11 at 6). Plaintiff points to Nelson's deposition and his assertion that he is unaware of any officer found responsible for engaging in racial profiling.  *Id.*[11]  Finally, Plaintiff outlines the efforts made by the Federal Way Police Department, as reported by Nelson, to meet the statutory obligation of working with minority communities to address the issue of racial profiling as required by RCW 43.101.410(e).  Dkt. # 39 at 19.  None of the evidence cited by Plaintiff or provided in the record supports the assertion that the City of Federal Way's racial bias prevention training results in a deliberate indifference to constitutional violations by their officers.  Plaintiff points to no evidence that "[a] pattern of similar constitutional violations by untrained employees" has occurred in the Department.  *Connick*, 563 U.S. at 62.  Plaintiff does not point to any evidence of

---

[11] Plaintiff does not cite to the record for this claim and the portion of Nelson's deposition submitted by Plaintiff does not include this assertion.  But it can be found at Dkt. # 32-1 at 21, 23, submitted by Defendants.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 26

detectives or officers, including Coffey, who have been found to have violated an individual's

Fourth Amendment rights.

## IV

### CONCLUSION

For these reasons, the Court GRANTS Defendant's motion for summary judgment.  Dkt.

# 24.  The Court DISMISSES Plaintiff's claims with prejudice.[12]

Dated this 3rd day of November, 2023.

John H. Chun
United States District Judge

---

[12] Defendants also assert the affirmative defense of qualified immunity.  Dkt. # 24 at 24–25. Given the conclusions above, the Court need not reach this issue.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 27